## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LARRY ROSENZWEIG, on behalf of himself and all others similarly situated, and derivatively on behalf of Nominal Defendant AMERICAN REALTY CAPITAL HEALTHCARE TRUST, INC.,<br>142 Pond Meadow Road<br>Killingworth, CT  06419 | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | **VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT** |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| NICHOLAS S. SCHORSCH<br>c/o American Realty Capital Healthcare Trust, Inc.<br>405 Park Avenue<br>New York, New York  10022 | ) ) ) ) ) ) | Civil Action No. |
| WILLIAM M. KAHANE<br>c/o RCS Capital Corporation<br>405 Park Avenue, 15th Floor<br>New York, New York  10022 | ) ) ) ) ) | |
| LESLIE D. MICHELSON<br>c/o Private Health Management, Inc.<br>1880 Century Park, East<br>Suite 425<br>Los Angeles, CA  90067 | ) ) ) ) ) ) ) | |
| ROBERT H. BURNS<br>c/o American Realty Capital<br>Healthcare Trust, Inc.<br>405 Park Avenue<br>New York, New York  10022 | ) ) ) ) ) ) | |
| P. SUE PERROTTY<br>c/o AFM Financial Services, LLC<br>1150 Raritan Road<br>Cranford, New Jersey  07016 | ) ) ) ) ) ) ) ) ) ) ) | |

VENTAS, INC.                                      )
533 North Clark Street                            )
Suite 3300                                        )
Chicago, IL  60654                                )
Serve on Resident Agent:                          )
The Corporation Trust Company                     )
Corporation Trust Center                          )
1209 Orange Street                                )
Wilmington, DE  19801                             )
                                                  )
AMERICAN REALTY CAPITAL V, LLC                    )
405 Park Avenue                                   )
New York, New York  10022                         )
Serve on Resident Agent:                          )
CSC Lawyers Incorporating Service Company         )
7 St. Paul Street                                 )
Suite 1660                                        )
Baltimore, Maryland  21202                        )
                                                  )
AMERICAN REALTY CAPITAL                           )
HEALTHCARE ADVISORS, LLC                          )
405 Park Avenue                                   )
New York, New York  10022                         )
Serve on Resident Agent:                          )
CSC Lawyers Incorporating Service Company         )
7 St. Paul Street                                 )
Suite 1660                                        )
Baltimore, Maryland  21202                        )
                                                  )
AMERICAN REALTY CAPITAL                           )
HEALTHCARE TRUST OPERATING                        )
PARTNERSHIP, L.P.                                 )
405 Park Avenue                                   )
New York, New York  10022                         )
Serve on Resident Agent:                          )
CSC Lawyers Incorporating Service Company         )
7 St. Paul Street                                 )
Suite 1660                                        )
Baltimore, Maryland  21202                        )
                                                  )
                                                  )
                                                  )
                                                  )
                                                  )
                                                  )

2

AMERICAN REALTY CAPITAL                     )
HEALTHCARE SPECIAL LIMITED                  )
PARTNERSHIP, LLC                            )
405 Park Avenue                             )
New York, New York  10022                   )
Serve on Resident Agent:                    )
CSC Lawyers Incorporating Service Company   )
7 St. Paul Street                           )
Suite 1660                                  )
Baltimore, Maryland  21202                  )
                                            )
STRIPE SUB, LLC,                            )
533 North Clark Street                      )
Suite 3300                                  )
Chicago, IL  60654                          )
Serve on Resident Agent:                    )
The Corporation Trust Company               )
Corporation Trust Center                    )
1209 Orange Street                          )
Wilmington, DE  19801                       )
                                            )
STRIPE OP, LP                               )
533 North Clark Street                      )
Suite 3300                                  )
Chicago, IL  60654                          )
Serve on Resident Agent:                    )
The Corporation Trust Company               )
Corporation Trust Center                    )
1209 Orange Street                          )
Wilmington, DE  19801                       )
                                            )
                       Defendants,          )
                                            )
        - and -                             )
                                            )
AMERICAN REALTY CAPITAL                     )
HEALTHCARE TRUST, INC.,                     )
405 Park Avenue                             )
New York, New York  10022                   )
Serve on Resident Agent:                    )
CSC Lawyers Incorporating Service Company   )
7 St. Paul Street                           )
Suite 1660                                  )
Baltimore, Maryland  21202                  )
                                            )
                       Nominal Defendant.   )

3

## COMPLAINT

Plaintiff, by his attorneys, alleges as follows as and for his shareholder derivative and class action complaint, upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief derived from, *inter alia,* counsel's review of documents filed with the Securities and Exchange Commission ("SEC"), press releases issued by defendants, and publicly available news sources, such as newspaper articles.

## NATURE OF THE ACTION

1.      This is a derivative action on behalf of nominal defendant American Realty Capital Healthcare Trust, Inc. ("HCT" or the "Company"), a recently publicly listed umbrella real estate investment trust, or UPREIT, which specializes in healthcare related properties.

2.      This action ("Action") is brought against HCT's current board of directors (the "Board"), among other Defendants, for the bad faith breaches of fiduciary duties owed to the Company in their approving  and agreeing to the unfair and inadequate acquisition of the Company for stock and cash by Ventas, Inc. ("Ventas") (the "Acquisition").  The Acquisition is not in the best interests of the Company and is not the product of the valid exercise of business judgment, but rather constitutes a self-interested transaction which will result in waste of the Company's assets.  The Acquisition further constitutes a breach of the Second Amended and Restated Agreement of Limited Partnership (the "Operating Partnership Agreement").

3.      Plaintiff also alleges class action claims on behalf of all HCT shareholders who will be damaged by the Acquisition (the "Class"), against the Defendant American Realty Capital Healthcare Advisors, LLC (the "Advisor"), which owes direct fiduciary duties to the Company's shareholders under the Second Amended and Restated Advisory Agreement (the "Advisory Agreement"), and against Defendants American Realty Capital V, LLC ("ARCP V"),

4

which is the Company's sponsor (the "Sponsor"), Nicholas J. Schorsch ("Schorsch"), William M. Kahane ("Kahane") and Robert H. Burns ("Burns") for aiding and abetting the Advisor's breach of its direct fiduciary duties owed to the proposed Class members.

4.      On June 2, 2014, HCT announced that it was entering into a transaction with Ventas pursuant to which Ventas is to acquire all of the outstanding shares of HCT for a limited amount of cash, equal to 10% of the overall consideration to be obtained by HCT shareholders, and for stock in the fixed amount of 0.1688 shares of Ventas stock for each share of HCT stock (the "Exchange Ratio"). The Acquisition, if allowed to proceed, is purportedly to yield to HCT shareholders consideration of $11.33 per share, for total consideration of $2.6 billion. As a consequence of the Acquisition, HCT shareholders will own only 8% of the resulting company, and HCT will no longer exist.

5.      The Acquisition consideration and Exchange Ratio are based upon an "agreed upon" price of Ventas shares of $67.13 per share—a price at which Ventas has rarely traded in the past year and below which it is presently, consistently trading. The Board, in an effort to further the interests of Schorsch and Kahane, agreed to the Exchange Ratio, providing HCT and its shareholders with unfair consideration, without even negotiating a collar such that HCT and its shareholders would be protected from the drop in Ventas' share price and the price volatility which is has experienced for at least the past year. Indeed, since the announcement of the Acquisition on June 2, 2014, Ventas' stock price has not traded even close to the "negotiated" price of $67.13, thereby yielding to the Company far less in consideration than the $2.6 billion announced price. Nonetheless, the Individual Defendants have taken no steps to renegotiate the Acquisition consideration.

6.      Notably, in a recent investor presentation dated April 2014, the Individual Defendants explicitly stated that HCT was a "strong value proposition compared to public peers" including Ventas, but nonetheless is now allowing Ventas to acquire HCT at a bargain price.

7.      The Individual Defendants, consisting of Schorsch, Kahane, Leslie D. Michelson ("Michelson"), Burns, and P. Sue Perrotty ("Perrotty") (collectively, the "Individual Defendants"), comprise the members of the Board.

8.      None of the Individual Defendants are independent from the interests of Schorsch and Kahane, the Company's executive chairman and its former President and Chief Operating Officer, respectively, and the entities which they own and control, including ARCP V, which is the Company's Sponsor, American Realty Capital Healthcare Trust Operating Partnership, LP (the "OP" or "Operating Partnership"), which is the operating partnership in which the Company holds its properties as an UPREIT, the Advisor, and American Realty Capital Healthcare Special Limited Partnership, LLC (the "SLP" or "Special Limited Partner"), which has a special limited partnership interest in the Operating Partnership and is owned in its entirety by the Sponsor, which, in turn, is majority-owned by Schorsch and Kahane.

9.      Schorsch and Kahane have direct pecuniary interests in the Acquisition which are not shared by the Company.  According to the Agreement and Plan of Merger (the "Merger Agreement"), the Operating Partnership will survive the Acquisition.  A distribution to the Special Limited Partner of over 5.6 million units of the Operating Partnership (which are convertible into Class C units of the Operating Partnership) will be made, giving the SLC majority control over the Operating Partnership (which has approximately 1.5 million units presently), enabling it to maintain an even larger percentage of the Operating Partnership's

#2219117v.1

distributions. It will further dilute the Company's interest which is presently as the majority holder of Operating Partnership Units.

10.     Under a listing note agreement dated April 7, 2014 (the "Listing Note Agreement"), and an amendment executed on June 1, 2014 in connection with the Acquisition, the amount of the SLP's distribution pursuant to the Listing Note Agreement is based upon a formula which is keyed to the market value of the Company's stock, defined as the average trading price for a 30-day period commencing 180 to 260 days after the Company first lists on a national exchange.

11.     Given that the Company first listed on NASDAQ on April 7, 2014, the market value, and thus the amount of the SLP's distribution pursuant to the amended Listing Note Agreement, cannot be determined until at least September.   Nonetheless, as part of the Acquisition, the Individual Defendants, including Schorsch and Kahane, have already agreed that the SLP, and thus Schorsch and Kahane, will receive over 5.6 million units of the Operating Partnership. The value of these units, moreover, will be "booked up" for tax purposes.

12.     This is particularly significant as HCT shares have traded below the $10 per share offering price a signicant amount of the time since its listing in April 2014 until the announcement of the Acquisition.  Under the formula contained in the Listing Note Agreement and the amendment thereto, as further discussed below, the SLP's distribution was likely to be minimal or non-existent, since the Company's stock was trading below its offering price. Consequently, by announcing the Acquisition, and then setting the amount of shares to be distributed to the SLP in the Acquisition pursuant to the amended Listing Agreement, Schorsch and Kahane were able to ensure that the SLP received an excessive distribution and secure their control over the Operating Partnership and lucrative distributions of profit produced by the

7

Company's properties.  In the meantime, the Company and its shareholders are to receive less consideration than they are entitled to and will own a small percentage of the resultant company.

13.     According to an investor presentation (the "Investor Presentation") filed by the Company on June 2, 2014, the Company's stockholders would have received $11.77 per share and thus the Company would have received greater consideration, but for the distribution to be made to the SLP.

14.     The Company constitutes the general partner (the "General Partner") of the Operating Partnership.   As such, the members of the Company's Board, the Individual Defendants, are all in a conflict of interest situation since they owe conflicting fiduciary obligations to both limited partners and SLP of the Operating Partnership, and to the Company. By approving the Acquisition, which benefits the SLP and Schorsch and Kahane, the Individual Defendants breached their fiduciary duties to the Company by failing to put the interests of the Company ahead of those of the limited partners and the SLP.   As the Board of the General Partner, they also breached Section 6.04 of the Operating Partnership Agreement, under which the General Partner is required to resolve any conflicts between HCT's stockholders and the limited partners of the Operating Partnership in favor of the stockholders.

15.     Although the Acquisition is a self-interested one, in which Schorsch and Kahane stand to benefit directly through their ownership of the Sponsor and the SLP, the Acquisition was negotiated without the institution of a special committee to protect the Company from Schorch and Kahane's self-interest and was approved by the entire Board notwithstanding its conflicts, and without independent counsel engaged solely on behalf of the Company and its shareholders. Moreover, at least one of the Company's financial advisors on the Acquisition was an affiliate of

8

RCS Capital Corp. ("RCS"), an entity which is controlled by Schorsch, and which Schorsch and Kahane used to sell shares of the Company.

16.     The resulting Acquisition is thus the product of an unfair process, and is being effected at an unfair price.  As such, Plaintiff seeks to enjoin the Acquisition unless and until its terms are renegotiated through a fair process or alternatively for damages.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1332, diversity jurisdiction, as Plaintiff is a resident of Connecticut, and each of the Defendants is a resident of states other than Connecticut, as further discussed below.  Further, the amount in controversy exceeds $75,000.

18.     This Court also has jurisdiction pursuant to Article XIV of the Company's Amended and Restated Bylaws (the "Bylaws"), entitled "Exclusive Forum for Certain Litigation," which provides that "[u]nless the Corporation consents in writing to the selection of an alternative forum, . . . the United States District Court for the District of Maryland, Baltimore Division, shall be the sole exclusive forum for (a) any derivative action or proceeding brought on behalf of the Corporation. . . ."

19.     Venue is proper in this judicial district under 20 U.S.C. Section 1391 as this is the district where certain of the Defendants reside and where the cause of action arose.

20.     This action is not a collusive action to confer jurisdiction on this Court.

## THE PARTIES

21.     Plaintiff is now, and at all times relevant to this action has been, a holder of HCT common stock.  Plaintiff is a resident of the State of Connecticut.

22.     Nominal Defendant HCT is an UPREIT, which was formed in August 2010, and is organized and exists under the laws of the State of Maryland.  The Company's principal executive office is located at 405 Park Avenue, 15th Floor, New York, New York 10022.

23.     HCT is one of nine REITS sponsored by the American Realty Capital group of companies, all of which are located at American Realty Capital's executive headquarters in New York.

24.     After a two year public offering, HCT stock commenced publicly trading as of April 7, 2014, on the NASDAQ.  As of April 21, 2014, 182,938,268 shares of HCT common stock were issued and outstanding.

25.     As of March 31, 2014, the Company owned 129 properties and one preferred equity investment located in 27 states with an aggregate purchase price of $1.9 billion, comprised of 6.8 million rentable square feet.

26.     HCT has no employees.  Its management functions are performed by the Advisor, defined below, which has been delegated those duties by the Board.

27.     The Company's property manager is American Realty Capital Healthcare Properties, LLC (the "Property Manager"), and the Company's dealer manager is Realty Capital Securities, LLC (the "Dealer Manager").  The Property Manager is a wholly owned entity of, and the Dealer Manager is under common ownership with, the Company's Sponsor, which is majority owned and controlled by Schorsch and Kahane.

28.     The Company's executive officers, of which there are currently five, are all employees of the Advisor and do not receive any compensation directly from the Company, nor does the Company reimburse the Advisor for the salary or other compensation it pays to the Executive Officers. The Company does not have a conflicts committee.

29.     Defendant ARCP V is a Delaware limited liability company and HCT's Sponsor. It is indirectly or directly controlled by Schorsch and Kahane, as well as American Realty executives Peter M. Budko ("Budko"), Brian S. Block ("Block"), and Edward M. Weil, Jr. ("Weil"). It wholly owns the Special Limited Partner and the Advisor and is under common ownership with RCS, a broker dealer which was used to sell the Company's shares, and which, through an affiliate, acted as a financial advisor on the Acquisition despite its conflicts. RCS is wholly owned by American Realty Capital II, LLC ("ARC II"), which is directly or indirectly owned by Schorsch, Kahane, Budko, Block and Weil, and controlled by Schorsch and Kahane. The Sponsor is sued as an aider and abettor.

30.     Defendant the Advisor, is a Delaware limited liability company and the external advisor for managing the day to day activity of HCT.    It is an affiliate of the American Realty Capital group of companies, and is wholly owned by the Sponsor.  Pursuant to the amended Advisory, to which the Advisor, the Company and the Operating Partnership are parties, the Advisor serves as the Company's and the Operating Partnership's investment and financial advisor and is a fiduciary to both the Company's shareholders and the partners in the Operating Partnership.  It has also been delegated the responsibility of overseeing all "Affiliates of the Advisor and Persons acting in any other capacity deemed by the Advisor necessary" to enable it to perform those obligations delegated to it by the Board.  The Advisor, a limited partner, also holds 202 OP Units.

31.     The Advisor is sued derivatively herein for breaching its fiduciary duties to nominal defendant HCT and directly by the putative class members for breaches of the fiduciary duties which it owes to them directly.

11

32.     Defendant the Operating Partnership,  is a Delaware limited partnership, and the operating partnership through which the Company operates and holds it properties.    The Company is the sole General Partner of OP and holds a majority of all of the units of limited partner interests in the OP ("OP Units").    According to the Partnership Agreement, Section 6.04(b), the General Partner acts for the benefit of the Partnership, the Limited Partners, and the General Partner's stockholders.   Where there is a conflict between the interests of the Limited Partners and the stockholders that cannot be resolved in a manner not adverse to either the stockholders, the Limited Partners or the Special Limited Partner, it "shall be resolved in favor of the stockholders of the General Partner".   Given that the General Partner is the Company, the Board of the General Partner is the Board as defined herein.

33.     The Operating Partnership is sued as an aider and abettor.

34.     Defendant SLP is a Delaware limited liability company, and a limited partner of the Operating Partnership.  It is wholly owned by the Sponsor, and thus indirectly, by Schorsch and Kahane.  It is the primary entity through which the Sponsor earns and takes a profit from the Company's (and the Operating Partnership's) operations, as it was, before the announcement of the Acquisition, entitled to distributions based upon a formula set forth in the Partnership Agreement. As a consequence of the Acquisition, the SLP will be contributing its Special Limited Partner Interest, or the distribution to which it would have been entitled, for over 5.6 million units of the Operating Partnership, which OP Units are convertible to Class C Units of the Operating Partnership.  Class C Units represent the SLP's profit interests in the Operating Partnership.

35.     The SLP is being sued so that complete relief can be awarded, and as an aider and abettor.

#2219117v.1

36.     Defendant Schorsch is now, and at all times relevant to this action has been, Chairman and/or Executive Chairman of the Company's Board of Directors.  He and Kahane are the co-founders of the American Realty Capital family of entities — entities which are known to complete liquidity events within a short period after raising public money.  Schorsch served as Chairman of the Board since the Company's formation in August 2010, and as the Company's chief executive officer ("CEO") from August 2010 until March 2014, when he became the Executive Chairman of the Board.  Schorsch was most recently re-elected to the Board for a one-year term at the Company's May 28, 2014 Annual Meeting of Stockholders (the "2014 Annual Meeting").  He is a resident of New York.

37.     Schorsch has further acted as a director, chairman of the Board, and/or chief executive officer of every other related American Realty Capital entity, including but not limited to American Realty Capital Trust, Inc., Philips Edison—ARC Shopping Center REIT Inc., American Realty Capital—Retail Centers of American, Inc., ARC RCA, ARC RCA advisor, New York REIT, Inc., NYRT Advisor, NYRT Property Manager, American Realty Capital Daily Net Asset Value Trust, Inc., ARC DNAV Advisor, ARC DNAV Property Manager, American Realty Capital Properties, Inc., American Realty Capital Global Trust, Inc., ARC Global Advisor, ARC Global Property Manager, American Realty Capital Trust IV, Inc., ARCT IV Advisor, ARCT Property Manager, American Realty Capital Healthcare Trust II, Inc., ARC HT II, Advisor and ARC HT II Property Manager, among other entities.

38.     Schorsch, together with Kahane, is a majority owner of, and controls, the Sponsor, which wholly owns the Advisor.  Schorsch also serves as Executive Chairman of the board of directors of RCS Capital, an affiliate of which acted as a financial advisor to HCT in

connection with the Acquisition, and whose broker dealer is Realty Capital Securities, LLC ("RC Securities"). Schorsch, is also one of the majority owners of the Sponsor, ARCP V.

39.     Defendant Kahane is now, and at all times relevant to this action has been, a director of the Company, and was the President and Chief Operating Officer of the Company, the Advisor, and the Property Manager. Kahane, who co-founded the American Realty Capital group of entities, has also served as an executive officer and/or director of many of the related American Realty Property entities, including ARCT, ARC RCA, ARC RCA Advisor, ARC RCA Property Manager, ARC DNAV, ARC DNAV Advisor, ARC DNAV Property Manager, ARCT III, ARCT III Advisor, ARCT III Property Manager, NYRT, ARCP, ARCP Advisor, BDCA, RCS Capital, ARC HT II, and RCS Capital. He is a resident of New York.

40.     Kahane, together with Schorsch, is a majority owner of, and controls, the Sponsor, which wholly owns the Advisor. Kahane also serves as Chief Executive Officer of RCS Capital, an affiliate which acted as a financial advisor to HCT in connection with the Acquisition, and whose broker dealer is RC Securities.

41.     Defendant Michelson is now, and at all times relevant to this action has been, a director of the Company. Michelson was initially appointed to the Board in January 2011 and was most recently re-elected to the Board for a one-year term at the Company's 2014 Annual Meeting. Michelson is Chairperson of the Audit Committee of the Board, the Compensation Committee and the Nominating and Corporate Governance Committee. On July 10, 2012, the Board appointed Michelson as the lead independent director of the Company. He is a resident of California.

42.     Michelson has also served as a director on many of other American Realty Capital entities, including RCS Capital, BDCA, ARC RCA, and NYRT. Michelson has served on over

#2219117v.1

three related entities at the same time, including ARC RFT, RCS Capital, ARCG and BDCA. Prior to listing, the Company was governed by the Statement of Policy Regarding Real Estate Investment Trusts issued by the North American Securities Administrators Association, or the NASAA Guidelines. Under Definition 14 of the NASAA Guidelines, Michelson did not qualify as an independent director prior to the Company's listing given his directorships on more than three related entities at the same time, and cannot now be considered an independent director. Further, as a board member of the General Partner of the Operating Partnership, which provided the SLP with an excessive distribution at the expense of the Company and its shareholders, Michelson was conflicted and placed the interests of the SLP, and thus ARCP V, Schorsch and Kahane above those of the Company and its shareholders.

43.     Defendant Burns is now, and at all times relevant to this action has been, a director of the Company.    Burns is a member of the Board's Audit Committee, the Compensation Committee and the Nominating and Corporate Governance Committee.  He is a resident of New York.

44.     Burns has also served as a director on many other American Realty Property entities including NYRT, ARCT III, ARCT and ARC V, the Sponsor. Under Definition 14 of the NASAA Guidelines, Burns did not qualify as an independent director given his directorships on more than three related entities at the same time prior to the Company's listing, and cannot now be considered an independent director. Further, as a board member of the General Partner of the Operating Partnership, which provided the SLP with an excessive distribution at the expense of the Company and its shareholders, Burns was conflicted and placed the interests of the SLP, and thus ARCP V, Schorsch and Kahane above those of the Company and its shareholders. Moreover, as a board member of ARCP V, which is controlled by Schorsch and Kahane, Burns

15

was in a conflict of interest situation, and chose the interests of Schorsch and Kahane above those of the Company and its shareholders.

45.     Defendant Perrotty is now, and at all times relevant to this Action has been, a director of the Company.  Defendant Perrotty was initially appointed to the Board in November 2013, and was most recently re-elected to the Board for a one-year term at the Company's 2014 Annual Meeting.   Defendant Perrotty is a member of the Board's Audit Committee, the Compensation Committee and the Nominating and Corporate Governance Committee.  Perrotty has also served as a director of ARC DNAV.  She is a resident of Pennsylvania.

46.     Defendant Ventas, Inc., a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 533 North Clark Street, Suite 3300, Chicago, IL 60654.  It is a REIT and an S&P 500 company, with a portfolio of nearly 1,500 assets in 47 states, 2 Canadian provinces, and abroad, and provides management, leasing, marketing, facility development and advisory services to hospitals and health systems throughout the United States.

47.     Defendant Stripe Sub, LLC (the "Merger Sub") is a Delaware limited liability company, with an agent for service of process in Delaware, and a direct wholly-owned subsidiary of Ventas.  It is being sued so that complete relief can be granted.

48.     Defendant Stripe Op, LP (the "OP Merger Sub") is a Delaware limited partnership, with an agent for service of process in Delaware and   is being sued so that complete relief can be granted.

16

## THE INDIVIDUAL DEFENDANTS' DUTIES

49.     Under Maryland Corporations and Associations Law, Section 2-405(a), the Individual Defendants owe fiduciary duties to the Company of (1) good faith; and (2) to act in a manner reasonably believed to be in the Company's best interest; and (3) with ordinary care.

50.     Moreover, in the event of a self-interested transaction, in which directors stand on both sides of the transaction as in this instance, the Individual Defendants are required to act in a manner that is entirely fair to the Company; that is, the process through which the transaction is obtained must be entirely free of the taint and interest of the self-interested directors, and the price at which the transaction is obtained must be fair and adequate.  The Individual Defendant must also be fully informed.

51.     In accordance with their fiduciary duties as directors and/or executive officers of HCT, the Individual Defendants were obligated to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties were divided;

(b)     participating in any transaction where the directors or officers were entitled to receive a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

52.     The Individual Defendants are acting in concert with one another in violating their fiduciary duties as alleged herein, and specifically in connection with the Acquisition.

## CLASS ACTION ALLEGATIONS AGAINST
## THE ADVISOR AND ITS AIDERS AND ABETTORS

53.     Plaintiff brings direct claims against the Advisor for breach of its fiduciary duties owed to HCT's shareholders, and against the Sponsor, and Schorsch, Kahane and Burns, as aiders and abettors,  for the breach of the Advisor's fiduciary duties to those HCT's shareholders who will be damaged by the Acquisition (the Advisor, the Sponsor, Schorsch, Kahane and Burns are, collectively, the "Class Action Defendants").  Excluded from the Class are Defendants and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

54.     The members of the Class are so numerous that joinder of all of them would be impracticable.  As of April 21, 2014, 182,938,268 shares of HCT common stock were issued and outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

55.     Plaintiff's claims are typical of the claims of the Class because Plaintiff has the same interests as the other members of the Class and Plaintiff and the other members of the Class have and will sustain harm arising out of the Class Action Defendants' breaches of fiduciary duties, or their acts as aiders and abettors.  Plaintiff does not have any interests that are adverse or antagonistic to those of the Class.  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is committed to the vigorous prosecution of this Action and has retained counsel competent and experienced in this type of litigation.

56.     Questions of law and fact common to the members of the Class predominate over any questions which, if they exist, may affect individual Class members.   The predominant questions of law and fact include, among others, whether:

(a)     the Class Action Defendants have and are breaching their fiduciary duties owed to Plaintiff and the Class;

#2219117v.1

(b)     the Acquisition is entirely fair or an exercise of reasonable business judgment; and

(c)     Plaintiff and the Class are entitled to an injunction and other equitable relief and/or damages.

57.     A class action is superior to all other available methods for the fair and efficient adjudication of the claims against the Class Action Defendants, since joinder of all members is impracticable.  The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Class Action Defendants, or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  Plaintiff anticipates no difficulty in the management of this action as a class action.

58.     The Class Action Defendants have acted, or refused to act, on grounds generally applicable to, and are causing injury to the Class, and, therefore, final injunctive relief on behalf of the Class as a whole is appropriate.

## DERIVATIVE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

59.     Plaintiff also brings this Action derivatively in the right and for the benefit of HCT for the injuries which it has and will continue to sustain as a result of the Acquisition and the Individual Defendants' breaches of their fiduciary duties to HCT.

60.     Plaintiff owns and has owned HCT common stock at all times relevant hereto. Plaintiff will adequately and fairly represent the interests of the Company. Plaintiff has retained counsel experienced in these types of actions to prosecute claims on the Company's behalf.

#2219117v.1

61.     Any pre-suit demand upon the Board to commence this Action would have been futile and is excused based upon the allegations above.

62.     The Board is composed of the five Individual Defendants, Schorsch, Kahane, Burns, Michelson and Perrotty.  As further described above, both Schorsch and Kahane have direct pecuniary interests in the Acquisition and as such stand on both sides of the Acquisition. Given their interests, and the fact that they are both inside directors, they are not independent for purposes of demand futility and could not independently respond to a shareholder demand for action.

63.     Burns is not independent for purposes of demand futility. Burns is a director of ARC V, the entity which controls the Advisor, and over which both Schorsch and Kahane have control.  ARC V is the entity which will receive the profit distribution from the Operating Partnership that is being distributed through the SLP, to ARC V and to Kahane and Schorsch. Consequently, as a director of ARC V, the Sponsor, Burns has aided and abetted the Kahane and Schorsch breaches of fiduciary duties to the Company and put their interests ahead of those of the Company.

64.     Moreover, Burns has served on over three related American Realty entities simultaneously, HCT, NYRT, ARCT III, and ARCT, and thus violated the independence provision of the NASAA Guidelines, which were in effect only two months ago.

65.     Finally, Burns has acted in a conflict of interest situation in that he has acted as a board member of the General Partner, while at the same time acting as a Board member of HCT at a time when the interests of the SLP and the Operating Partnership (and Schorsch and Kahane) were placed ahead of those of HCT and its shareholders.

66.     For similar reasons, Michelson cannot be considered independent for purposes of considering whether a pre-suit demand would have been futile.  Michelson has simultaneously served on at least four boards of related American Realty Capital entities, HCT, RCS Capital, ARCP and BDCA, which is a violation of the independence standard under the NASAA Guidelines, which were applicable to the Company less than two months ago.

67.     Michelson further acted on the boards of both the General Partner of the Operating Partnership and the Company at the same time, placing him in a conflict of interest situation in which he placed the interests of the Operating Partnership, the SLP, and thus Schorsch and Kahane, ahead of those of the Company.

68.     Perrotty cannot be considered independent since she served on both the board of the General Partner and the Company at the same time, and in that context put the interests of the Operating Partnership, the SLP, Schorsch and Kahane over those of the Company.

69.     Finally, Ventas has agreed to indemnify the Individual Defendants and hold them harmless from liability with respect to the Acquisition.  These Individual Defendants may also remain as board members of the General Partner, which will remain as the General Partner of the Operating Partnership after the consummation of the Acquisition.

70.     None of the Individual Defendants is independent, either because he/she has direct (Schorsch and Kahane) or indirect (Burns and Michelson) pecuniary interests in the Acquisition and in the American Realty Capital family of entities, and/or there is a substantial basis for his/her liability for having approved the Acquisition and placing the interests of the SLP, Kahane and Schorsch ahead of those of the Company.

71.     Thus a pre-suit demand upon the Board would have been futile.  This is especially true since, as the Company has represented in a recent Schedule 14(a) Proxy Statement filed on

21

May 28, 2014 at page 10, it does not have a process for approving affiliated or conflicted transactions.

72.     As the Proxy Statement states, "The entire Board is actively involved in overseeing risk management for the Company through its approval of all property acquisitions, incurrence and assumption of debt, its oversight of the Company's executive officers and the Advisor, managing risks associated with the independence of the members of the Board, and reviewing and approving all transactions with affiliated parties and resolving other conflicts of interest between the Company and its subsidiaries, on the one hand, and the Sponsor, any director, the Advisor or their respective affiliates, on the other hand."

## BACKGROUND

## HCT'S CREATION AND LISTING

73.     HCT is an UPREIT which is part of the American Realty Capital family of entities, co-founded and controlled in large part by Schorsch and Kahane.  It was created in August 2010 as a publicly held non-listed REIT. From the period of February 2011 to April 2013, the Company held an IPO selling approximately 180 million shares at approximately $10 per share for gross proceeds of $1.8 billion, including proceeds from a dividend reinvestment plan or DRIP, in which shares were sold at $9.50 per share. The shares were offered on a reasonable best efforts basis by the Schorsch and Kahane affiliate, RCS, among others.

74.     The Company presently has a portfolio composed of medical office buildings, senior housing communities, hospitals and post-acute care facilities.  As of June 2014, it holds 143 properties throughout 27 states with an aggregate purchase price of $1.6 billion.

75.     The Company closed its IPO in April 2013 and operated as a non-traded REIT through April 6, 2014, when the Company's common shares were listed for trading on the NASDAQ (the "Listing").

76.     On April 7, 2014, the Company filed Form 8-K with the SEC announcing the April 7 commencement of trading of the Company's common stock on the NASDAQ under the ticker symbol "HCT."   Commenting on the Company's NASDAQ listing, HCT's CEO Tom D'Arcy stated, "ARC Healthcare's successful listing on NASDAQ is a very important milestone for the company.  By listing on NASDAQ, we achieve two goals: position the company for more efficient access to the capital markets to drive future growth and provide liquidity for our shareholders."

77.     The CEO further stated, "We believe our strong and diverse portfolio of 141 real estate assets, with 7.1 million rentable square feet, combined with our proven ability to acquire strategic assets, our experienced management team and our investment grade quality balance sheet, positions us well for future growth and continuing success."

78.     Also commenting on the listing, Schorsch stated, "Our focus has always been to enhance shareholder value by building a well-diversified portfolio of assets, with a strong and flexible capital structure, led by an experienced and proven management team.  By strategically and systematically executing our business plan, which includes today's listing of our shares on NASDAQ, we believe ARC Healthcare is well-positioned to further drive value throughout the next phase of the company's evolution."

79.     The Company also announced on April 7, 2014, that it was commencing a concurrent tender offer to purchase an amount in value of its shares of common stock up to $150 million from its stockholders, for $11 per share, net to the seller in cash, less any applicable withholding taxes and without interest (the "Tender Offer").

80.     Despite the Tender Offer, which was timed to increase the trading price of HCT shares, from its Listing until the announcement of the Acquisition, HCT's stock has frequently traded below its $10 per share offering price.

81.     The declining stock price, plus the decrease in fees and distributions accruing to the SLP, the Advisor, the Property Manager and other Schorsch and Kahane affiliates, induced the Defendants to enter into the Acquisition, as further discussed below.

## DEFENDANTS' FEES

82.     HCT was designed as a mechanism to generate fees for Schorsch and Kahane through their American Realty Capital affiliates, and to raise money and liquidate quickly in order to generate fees and distributions for the SLP, and thus ARCP V, Schorsch and Kahane.

83.     As an UPREIT, HCT holds its properties in a limited partnership, the Operating Partnership, the General Partner of which is the Company, which also holds a majority of the OP Units. One of its limited partners is the SLP, an entity which is majority owned by Schorsch and Kahane, through the Sponsor, which in turn also wholly owns the Advisor, which shares common ownership with RSC.  The SLP is the entity through which the Sponsor, and thus Schorsch and Kahane receive their profit distributions from the Company.

84.     These affiliated relationships can be diagrammed as follows:



85.     The primary means for the Sponsor, Schorsch and Kahane and their affiliates to earn monies from the Company was through the sale and purchase of shares by RCS, the sale and purchase of properties through which the Advisor would earn fees, and the management of these properties through which the Property Manager would earn fees.

86.     Upon liquidation, the Sponsor, Schorsch and Kahane would earn a profit payment through the SLP Interest in the Operating Partnership.

87.     Thus, prior to listing and its purchase of its portfolio, the Company was subject to a host of fees payable to the various American Realty entities, including the following:  selling commissions payable to the Dealer Manager (RSC) for the sale of common stock; a Dealer Management Fee to the Dealer Manager (RSC); the Offering Expenses to the Advisor; Property Acquisition Fees to the Advisor; Acquisition Expenses to the Advisor; Asset Management Fees to the Advisor; Property Management Fees to the Advisor; Operating Expenses to the Advisor;

Financing Coordination Fees to the Advisor; and Real Estate Commissions to the Advisor or any other affiliate.

88.    The SLP, on the other hand, was entitled to a fee upon the listing of the Company on an exchange of approximately 15% of the amount by which the market value of the Company exceeds the amount raised in the IPO plus a 6% cumulative, pre-tax, non-compounded return.

89.    As the money generated through the IPO was used to purchase properties and the IPO closed, the fees accruing to Schorsch and Kahane's various affiliated entities, including the Advisor and RCS declined.

90.    By early 2014, the Individual Defendants, including Schorsch and Kahane, determined to commence liquidating the Company by listing it in connection the Tender Offer at $11.00 per share, in an attempt to ensure that the SLP would earn a handsome profit distribution under the Special Limited Partner Interest.

91.    The market, however, did not cooperate, and despite the fact that the Individual Defendants timed the listing with the Tender Offer, HCT's stock price continued to decline from its opening price of over $10 per share to below that price until June 2, 2014, upon the announcement of the Acquisition.

92.    Given the likelihood that they would end up with no SLP distribution if the market value of the Company continued to fall, on June 1, 2014, the Individual Defendants hurriedly entered into and approved the unfair Acquisition by Ventas for the benefit of the SLP, the Sponsor, Schorsch  and Kahane.

**The Negotiation of the Acquisition**

93.    Although the details of the negotiations, if any, of the Acquisition have not yet been disclosed, the Company's filings, including the Proxy Statement referenced above, indicate that the Company took no steps to ensure that the negotiations leading to the Acquisition were

26

untainted by conflicts of interest, especially those of Schorsch and Kahane, or that the price, which is based upon an Exchange Rate, which in turn is based upon a negotiated price for Ventas well above its market price, was fair to the Company and its shareholders.

94.     Moreover, as further discussed below, the Individual Defendants failed to use reasonable care in approving the Acquisition, by failing to test the market to determine whether they could obtain a higher price for HCT's shares, or whether they could take other steps to increase HCT's share price, and have agreed not to undertake a market shop after executing the Merger Agreement. Consequently, the Individual Defendants, who have failed to properly inform themselves of the potential value of HCT, have not and cannot demonstrate that they have made an informed and knowledgeable decision in approving the Acquisition.

## THE ACQUISITION

95.     Pursuant to the terms and subject to the conditions set forth in the Merger Agreement, each share of HCT common stock issued and outstanding immediately prior to the effective time of the Acquisition will be converted into the right to receive, pursuant to an election made by each holder of the Company's common stock, (i) $11.33 in cash, or (ii) 0.1688 shares of common stock of Ventas.  However, pursuant to the Merger Agreement, in no event will the aggregate consideration paid in cash be paid on more than 10% of the shares of Company, and if the aggregate elections for payment in cash exceed such 10% threshold, then the amount of cash consideration paid on cash elections will be reduced on a *pro rata* basis with the remaining consideration paid in Ventas common stock.  Non-electing stockholders of HCT will receive Ventas common stock based on the Exchange Ratio.  Stockholders will not have a right to elect appraisal as an alternative remedy.

96.     In addition, the Company's interest as the General Partner of the OP will remain outstanding and constitute the only outstanding general partnership interest; and each unit of

27

limited partnership interests in the OP or the "OP Units issued and outstanding immediately prior to the effective time of the Partnership Merger, including the 5,613,374 OP Units to be issued in respect of the termination of the Listing Note Agreement to the SLP, will be converted into such number of Class C Units, thereby diluting the Company's holdings in the OP. Class C Units are profit interests in the Operating Partnership.

97.    Both the Advisory and Property Management Agreements, among other things, will be cancelled.

98.    The number of Ventas shares to be received by HCT stockholders is based upon a negotiated Ventas stock price of $67.13 -- a value significantly higher than Ventas' trading price since the announcement of the Acquisition and a price at which it has rarely traded in the past year.

**Preclusive Deal Protection Devices**

99.    Pursuant to the Merger Agreement, the Individual Defendants further agreed to certain onerous and preclusive deal protection devices that operate conjunctively to ensure that no competing offers will emerge for the Company, and also ensure that they will be unable to test the market to fully inform themselves as to the amount of consideration which another purchaser will be willing to pay—the best test of the value of a company.

100.    Pursuant to Section 6.5(a) of the Merger Agreement, the Individual Defendants have agreed, among other things, not to solicit offers or inquires from third parties to acquire the Company, and not to engage in any discussions or negotiations regarding any such proposal, or furnish to any third party non-public information regarding the Company.

101.    The Merger Agreement also provides that if the Company's Board receives what it believes to be a superior offer, it must then consult with a financial advisor and outside legal counsel to confirm if the offer is actually superior, and then provide Ventas with 3 business days

to top the bid.   In summary, the Merger Agreement allows Ventas free reign to top a superior offer simply by matching it.   Accordingly, no rival bidder is likely to emerge to act as a stalking horse, because the Merger Agreement unfairly assures that any "auction" will favor Ventas.

102.   The Merger Agreement also includes certain termination rights for both the Company and Ventas including a payment to Ventas of $55,000,000 if the Company accepts a superior proposal.

103.   In conjunction with Maryland's already stringent anti-takeover statutes, these preclusive deal protection provisions illegally restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company, or to enable the Individual Defendants to comply with their fiduciary duties in the event of a superior proposal in which they should exercise a "fiduciary out".

104.   These preclusive deal provisions are particularly burdensome given that the Merger Agreement prevents the Company from engaging in a market check.   Section 6.5(g) of the Merger Agreement provides:

> Upon execution of this Agreement, the Company shall, and shall cause each of the other Company Entities, and its and their officers and directors, managers or equivalent, and other Representatives to (i) immediately cease any existing discussions, negotiations or communications with any Person conducted heretofore with respect to any Acquisition Proposal and (ii) take such action as is necessary to enforce any confidentiality or standstill provisions or provisions of similar effect to which any Company Entity is a party or of which any Company Entity is a beneficiary.   The Company shall use reasonable best efforts to cause all Third Parties who have been furnished confidential information regarding any Company Entity in connection with the solicitation of or discussion regarding an Acquisition Proposal with the six (6) months prior to the date of this Agreement to promptly return or destroy such information (to the extent that they are entitled to have such information returned or destroyed).

105.    As a result, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company and its shareholders will suffer absent judicial intervention.

## COUNT I
### (Derivative Claim for Breach of Fiduciary Duty Against the Individual Defendants)

106.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

107.    As members of the Company's Board, the Individual Defendants have fiduciary obligations to: (a) undertake an appropriate evaluation of HCT's value as a merger/acquisition candidate; (b) take all appropriate steps to enhance HCT's value and attractiveness as a merger/acquisition candidate; (c) act independently to protect the interests of the Company; (d) adequately ensure that no conflicts of interest exist between the Individual Defendants' own interests and their fiduciary obligations, and, if such conflicts exist, to ensure that all conflicts are resolved in the best interests of HCT; (e) actively evaluate the Acquisition; (f) take all steps necessary to make a fully informed decision and (g) to act in the best interests of the Company.

108.    The Individual Defendants have breached their fiduciary duties to the Company by (1) approving an entirely unfair transaction, which was the product of a process tainted by self-interest, at an inadequate price; and/or (2) failing to exercise reasonable care to fully inform themselves of the Company's true value and the value of Ventas before entering into the Acquisition.

109.    As alleged herein, the Individual Defendants have initiated a process to sell HCT that undervalues the Company and vests certain of them with benefits that are not shared equally by HCT and constitutes a waste of HCT's assets.  In addition, by agreeing to the Acquisition, the Individual Defendants have capped the price of HCT at a price which does not adequately reflect the Company's true value.  The Individual Defendants also failed to sufficiently inform themselves of HCT's value, or disregarded the true value of the Company in an effort to benefit

#2219117v.1

themselves.  Furthermore, any alternate acquirer will be faced with engaging in discussions with a management team and Board that is committed to the Acquisition.

110.   As such, unless the Individual Defendants' conduct is enjoined by the Court, they will continue to breach their fiduciary duties to the Company.

111.   The Company has no adequate remedy at law.

### COUNT II
### (Derivative Claims for Aiding and Abetting the Board's Breaches of Fiduciary Duty Against the SLP, the Operating Partnership, the Sponsor and Ventas)

112.   Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

113.   Defendants the SLP, the Operating Partnership, the Sponsor, and Ventas knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Acquisition and provided substantial assistance without which such breaches would not have occurred.

114.   As a result of this conduct, the Company has been and will be damaged in that it has been and will be prevented from obtaining a fair consideration.

115.   The Company has no adequate remedy at law.

### COUNT III
### (Derivative Claim for Breach of Contract Against the Individual Defendants)

116.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

117.   As members of the Board of the General Partner and the Company's Board, the Individual Defendants had contractual duties pursuant to Section 6.04 of the Partnership Agreement to place the interests of the Company ahead of those of the limited partners of the Operating Partnership, in the event of a conflict of interest situation in which the conflict could not be resolved to the benefit of all entities.

118.    The Individual Defendants, while acting as both the directors of the General Partner and the Company, when faced with the choice of approving a conflicted transaction, were, as directors of the General Partner, to cause the General Partner to place the interests of HCT's shareholders above those of other limited partners.

119.    In approving the unfair and inadequate Acquisition, they instead placed the interest of the SLP (and Schorsch, Kahane and the Sponsor) ahead of those of HCT and its shareholders.

120.    The Individual Defendants have thus caused the nominal defendant as the General Partner to breach the Partnership Agreement, and subjected it to potential liability.

121.    As such, they have breached the Partnership Agreement.

122.    Unless the Individual Defendants' conduct is enjoined by the Court, they will continue to breach their fiduciary duties to the Company.

123.    The Company has no adequate remedy at law.

## Count IV
### (Class Claims for Breach of Fiduciary Duties Against the Advisor)

124.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein, other than those allegations contained in Counts I - III.

125.    Pursuant to the Advisory Agreement, as amended, the Advisor owes direct fiduciary duties to HCT's shareholders.

126.    The Advisor, which had the obligation to serve as the Company's investment and financial advisor and to supervise others, approved and allowed the Individual Defendants and the Company to approve the unfair and tainted Acquisition.

127.    The Advisor has breached its fiduciary duties to Class members.

#2219117v.1

128.     As such, unless the Advisor's conduct is enjoined by the Court, it will continue to breach its fiduciary duties to the Company.

129.     The Class has no adequate remedy at law.

**Count V**
**(Class Claims for Aiding and Abetting Breach of the Fiduciary Duty of the Advisor Against The Sponsor, the SLP, the Operating Partnership, Schorsch, Kahane and Burns)**

130.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein, other than those allegations in Counts I - III.

131.     Defendants the SLP, the Operating Partnership, the Sponsor, Schorsch, Kahane and Burns knowingly assisted the Advisor's breaches of fiduciary duty in connection with the Acquisition and provided substantial assistance. Without such aid, the breaches would not have occurred.

132.     As a result of this conduct, Plaintiff and the other members of the Class have been and will be damaged.

133.     The Company has no adequate remedy at law.

**WHEREFORE,** Plaintiff prays for judgment and relief as follows:

(a)     Ordering that Counts I - III be maintained derivatively by Plaintiff on behalf of the Company;

(b)     Ordering that Counts IV - V be maintained as a class action and certifying Plaintiff as the Class Representative;

(c)     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Acquisition;

(d)     In the event Defendants consummate the Acquisition, rescinding it and setting it aside or awarding rescissory damages to Plaintiff, HCT and/or the Class;

33

(e)     Directing Defendants to account to Plaintiff, HCT and/or the Class for their damages sustained because of the wrongs complained of herein;

(f)     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

(g)     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: June 23, 2014

**TYDINGS & ROSENBERG LLP**

John B.  Isbister, Federal Bar No. 00639
Daniel S. Katz, Federal Bar No. 01148
100 East Pratt St., 26th Floor
Baltimore, Maryland 21202
Tel:  (410) 752-9700
Fax:  (410) 727-5460

Attorneys for Plaintiff

OF COUNSEL FOR PLAINTIFF

**THE GRANT LAWFIRM, PLLC**
Lynda J. Grant
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel: (212) 292-4441
Fax: (212) 292-4442

#2219117v.1

**STULL, STULL & BRODY**
Howard Longman
Jason D'Agnenica
6 East 45th Street
New York, NY 10017
Tel: (212) 687-7230
Fax: (212) 490-2022

#2219117v.1

## VERIFICATION

I, Larry Rosenzweig, hereby declare as follows:

I am a plaintiff in the within entitled action. I have read the Verified Class and Derivative Complaint ("Complaint") and know the contents thereof. Based upon the discussion with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and accepted.

Dated: 6/22/14

By: _____
Larry Rosenzweig